UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM THIBOULT, JR.,

                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**DECISION AND ORDER**

1:18-CV-00822 (JJM)

_____

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defend ant Commissioner of Social Security that plaintiff was not entitled to adult child's disability insurance benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [10, 18].[1] The parties have consented to my jurisdiction [20]. Having reviewed the parties' submissions [10, 18, 19], the action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

The parties' familiarity with the 498-page administrative record is presumed. The plaintiff filed an application for adult child's DIB and SSI on October 16, 2014. [10-1], p. 2. The claim was initially denied. Administrative Law Judge ("ALJ") Paul Georger conducted a hearing on February 24, 2017. Plaintiff appeared with a non-attorney representative.

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

Administrative Record [8], pp. 11, 46. ALJ Georger heard testimony from the plaintiff and vocational expert Mary Beth Kopar. Id., pp. 43-68. On July 11, 2017, ALJ Georger issued his Notice of Decision denying plaintiff's claim. Id., pp. 8–27.

**A.     The ALJ's Notice of Decision**

ALJ Georger concluded that plaintiff was not disabled from work. He reviewed the medical evidence available to him and analyzed it in the context of the well settled five-step test used to determine whether a claimant is entitled to disability benefits. Administrative Record [8], pp. 12–13.

At step two of the analysis (*i.e.* whether the claimant has a "severe impairment"), ALJ Georger determined that plaintiff had two severe impairments: learning disability and anxiety. Id., p. 14. ALJ Georger also considered medical evidence in the record concerning migraine headaches and low back pain, but determined that the medical evidence did not support a finding that either of those diagnoses was a severe impairment. Id. Plaintiff's medical evidence concerning low back pain extended back to 2014. *See* id., pp. 14, 413–16, 423. The most recent medical records available to ALJ Georger concerning plaintiff's low back pain were those of plaintiff's treating physician, Glennell Smith, M.D. Dr. Smith examined plaintiff concerning low back pain on February 2, 2017. Id., pp. 14, 489–90. A February 3, 2017 imaging report showed no acute abnormality. Id. ALJ Georger concluded, "[a]s there are no indications that these conditions will more than minimally affect the claimant's ability to work full time, the undersigned considered them non-severe." Id., pp. 14, 491.

At step three of the analysis (*i.e.* whether claimant has an impairment equivalent in severity to those listed in Appendix 1 of the regulations), ALJ Georger considered only listings 12.05 (intellectual disorder) and 12.06 (anxiety and obsessive-compulsive disorders).

Id., p. 14.  ALJ Georger determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR. Part 404, Subpart P, Appendix 1 (20 CFR [§§] 404.1520(d), 404.1525 and 404.1526 and 416.920(d), 416.925 and 416.926)." Id.  To arrive at this conclusion, ALJ Georger considered whether plaintiff's mental impairments resulted in at least one extreme, or two marked, limitations in specific areas of functioning, including: understanding, remembering, or applying information; and concentrating, persisting or maintaining pace.  Id.   To support his analysis, ALJ Georger referred primarily to an April 24, 2015 report from consultative examiner, Gregory Fabiano, PhD.

At step four of the analysis (*i.e.* whether claimant has residual functional capacity to perform his past work), ALJ Georger found that plaintiff "had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:  limited to perform simple, routine tasks; limited to simple work-related decisions and no complex tasks or instructions." Id., p. 16.  To arrive at this determination, ALJ Georger considered records and reports from a number of sources, including: plaintiff's testimony; consultative examiners Dr. Fabiano (reports dated  December 29, 2011 and April 24, 2014) and Renee Baskin, PhD (report dated February 17, 2012); school psychologist Rochelle Vaarwerk, M.A. (evaluation dated January 6, 2010); Buffalo School District; Sandra Mihallofski, Medicaid Services Coordinator; Jill Hamilton, PhD, Licensed Psychologist (report dated October 9, 2012); state agency review medical consultants "J. Echevarria" (review dated April 16, 2013) and "M. Marks" (review dated May 20, 2015); and Dr. Smith (July 22, 2016 treatment note concerning anxiety).  *See* Id., pp. 16–21.  ALJ Georger applied the requirements of the treating physician

rule, 20 C.F.R. §§ 404.1527 and 416.927. Id., p. 16. However, the ALJ assigned "great weight to the most recent opinion of consultative examiner, [Dr.] Fabiano". Id., p. 20.

Building upon his analysis at steps two through four, ALJ Georger found at step five of his analysis that plaintiff could perform work that exists in significant numbers in the national economy, such as laundry worker, sorter, and cleaner. Id., pp. 21–22. To support his finding, ALJ Georger relied upon testimony provided by vocational expert Mary Beth Kopar. Id. Ms. Kopar testified that plaintiff could perform his past work as a packer if he did not need a supervisor to consistently monitor his performance to keep him on task. Id., p. 67. Ms. Kopar testified that if such monitoring were required after an initial training period, plaintiff would be unable to perform any work. Id., pp. 66–67.

Therefore, ALJ Georger concluded that, "[p]rior to attaining age 22 and since his application for supplemental security income, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform". Id., p. 21.

**B.      Additional Evidence Submitted to the Appeals Council**

Plaintiff appealed ALJ Georger's Notice of Decision and submitted additional medical evidence to the Appeals Council for review in conjunction with his appeal. Administrative Record [8], pp. 36–42. The plaintiff submitted to the Appeals Council a "Medical Report for Determination of Disability" completed by Dr. Smith on November 14, 2017 (the "November 14, 2017 Report"). The November 14, 2017 Report was based on an August 15, 2017 Date of Examination. Id., p. 41. In the November 14, 2017 Report, Dr. Smith identified primary diagnoses of low back pain, and anxiety disorder, unspecified. In response to section 2 of the form, entitled "General Findings", Dr. Smith opined that plaintiff could not

perform specific physical functions listed under the categories of heavy, medium, light, or sedentary work (*e.g.* lifting a certain number of pounds with varying frequency, or sitting/standing/walking a certain number of hours per day), because "when he lifts he gets severe back pain". Id.  Under section 3 of the form, entitled "History of Major Disease or Disability", Dr. Smith stated that plaintiff had a congenital developmental learning disability. Id. In response to items listed under section 4, entitled "Detailed Findings Pertinent to Major Disease or Disability", Dr. Smith made the following statements:

- "chronic back pain with bending & back extension";
- "limited mental ability";
- "limited ability to think and concentrate";
- "limited ability to focus"; and
- "back pain with palpation flexion & extension".

Id., pp. 41–42.  Under section 7 of the November 14, 2017 Report, entitled "Evaluation", Dr. Smith stated that plaintiff was unable to do "usual work" or "any other type of work".  Id., p. 42. In addition, Dr. Smith stated that plaintiff is "unlikely" to recover, that significant improvement through medical treatment or rehabilitation is not likely, and that the plaintiff's impairment or impairments have lasted, or can be expected to last, for 1 year or more.  Id.

**C.     The Appeals Council's Determination**

The Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" and denied plaintiff's request for review.  Administrative Record [8], p. 1.  The Appeals Council also declined to "consider and exhibit" the November 14,

2017 Report, explaining, "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision." Id., p. 2.

**ANALYSIS**

Plaintiff argues that the Appeals Council improperly rejected the November 14, 2017 Report, and failed to provide any explanation to support its opinion that the evidence does not "show a reasonable probability that it would change the outcome of the decision." Plaintiff's Memorandum of Law [10-1], pp. 12–15. In response, the Commissioner argues that the November 14, 2017 Report does not provide a basis to disturb the ALJ's decision. Commissioner's Brief in Response [18-1], pp. 1, 21–25.

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

The Social Security Act provides disability insurance benefits for disabled, adult children "on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died" if the claimant is 18 years old or older and has a disability that began before he or she reached the age of 22. 20 C.F.R. § 404.350; *see also* 42 U.S.C. § 402(d). "In the context of determining eligibility for disabled adult child's benefits, the term 'disability' has substantially the same definition as it does in traditional, adult disability cases." Doerr v. Colvin,

2014 WL 4057446, *3 (W.D.N.Y. 2014); *see also* 20 C.F.R. § 404.1520(2) ("[t]hese rules apply to you if you file an application for a period of disability or disability insurance benefits (or both) or for child's insurance benefits based on disability"). It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process.[2] Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.  The Treating Physician Rule**

The Social Security Administration must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence in [the] record". 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).[3] If the treating physician's opinion does not meet this standard, the Administration may discount it, but it is "required to explain the weight it gives to the opinions of a treating physician . . . Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's medical opinion").

---

[2]  Neither party disputes that the five-step analysis is appropriate here.
[3]  "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4. (S.D.N.Y. 2019). This claim was filed on October 16, 2014.

When a treating physician's opinion is submitted to the Administration after the ALJ issues his or her decision, the Appeals Council must apply the same rule. Failure to do so may result in remand. See Newbury v. Atrue, 321 Fed. Appx. 16, *17 (2d Cir. 2009) (Summary Order) ("[w]e vacate and remand for further consideration because the ALJ and the Appeals Council failed to give any reasons for not crediting two assessments of Newbury's condition by her treating psychiatrist"). Courts should "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion". Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

C. The Appeal's Council's Legal Error

Plaintiff argues that the Appeals Council erred in failing to consider and apply the treating physician rule to the November 14, 2017 Report. Plaintiff's Memorandum of Law [10-1], pp. 12–15. Applying Second Circuit authority to the facts of this case, I agree, and find that the Appeals Council erred when it failed to either consider the November 14, 2017 Report, or provide its reasons for giving less than controlling weight to the content of that report. Here, the Appeals Council stated that it "did not consider and exhibit" the November 14, 2017 Report, but also found that the report "does not show a reasonable probability that it would change the outcome of the decision." Administrative Record [8], p. 2. However, without an explanation as to why the Appeals Council rejected the November 14, 2017 Report, the treating physician rule and Second Circuit authority require remand. Snell, 177 F.3d at 134 ("[w]e . . . conclude that Snell is entitled to an express recognition from the Appeals Council of the existence of Dr. Clark's favorable August report and, if the Council does not credit the findings of that report, to an explanation of why it does not"); Newbury, supra (applying Snell); see also Halloran, supra.

The Second Circuit consistently remands cases for further review when it is not clear from the administrative record whether the Appeals Council applied the correct legal standards to the plaintiff's medical evidence. *See* Snell, supra; Pollard v. Halter, 377 F.3d 183, 192–93 (2d Cir. 2004) ("the Appeals Council's conclusion that the 'new regulations do not provide a basis to change the Administrative Law Judge's decision,' is cursory, formulaic, and not supported by any legal or factual reasoning. . . . we likewise refuse to credit the unsupported conclusion by the Appeals Council that Ms. Pollard's application would have failed under the Final Rules. We conclude that a remand to the SSA for reconsideration under the Final Rules is necessary."); Newbury, supra; *see also* Shaw, 221 F.3d at 135 ("[a] remand for a step five analysis that places the burden of proof on the Commissioner to show that the claimant could perform other work in the economy, even if he could not perform his past work, is appropriate in cases where there is more uncertainty regarding the claimant's condition").

Lesterhuis v. Colvin, 805 F.3d 83 (2d Cir. 2015) is illustrative. There, the ALJ denied plaintiff's disability claim and the plaintiff appealed. Id. at 86. The plaintiff submitted new evidence from his treating physician to the Appeals Council, which added the evidence to the record, but denied review without any substantive discussion of the new evidence, stating, "[w]e found no reason under our rules to review the [ALJ's] decision. Therefore we have denied your request for review." Id. The court first considered substantial evidence and concluded that "the ALJ's decision was not supported by substantial evidence because the new evidence contradicted the ALJ's conclusion in important respects" and remanded the claim to the Commissioner for consideration of the new evidence. Id. at 88–89. Because its analysis was determinative, the Lesterhuis court did not consider whether the "Appeals Council has an independent obligation to provide 'good reasons' before declining to give weight to the new,

-9-

material opinion of a treating physician submitted only to the Appeals Council and not to the ALJ." Id. at 89.

However, notwithstanding the fact that the Second Circuit did not reach the issue in Lesterhuis, the Second Circuit's controlling decisions in Snell, supra, Hollaran, supra, and Newbury, supra impose such an obligation. *See, e.g.* Borsching v. Colvin, 102 F.Supp.3d 458, 463 (W.D.N.Y. 2015) ("[t]he treating physician rule applies with equal force to the Appeals Council's consideration of new and material evidence: as such, the Appeals Council's failure to specify the weight given to Dr. Spurling's opinion, and explain the reason for affording it such weight, is reversible error."); Durrant v. Berryhill, 2018 WL 1417311, *5 (W.D.N.Y. 2018) ("remand is required because the Appeals Council erred by failing to give controlling weight to the May 2015 opinions without comprehensively setting forth its reasons for doing so."); Fairweather v. Commissioner, 2019 WL 4643585, *2–*3 (W.D.N.Y. 2019) ("[t]he bottom line is that the AC rejected the findings and opinions set forth in these records without evaluating the merits of the work-related non-exertional limitations contained within them. This was error.").

The Appeals Council's analysis concerning plaintiff's residual functional capacity may differ from the ALJ's if it accords "controlling weight" to Dr. Smith's opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The November 14, 2017 Report contains several diagnoses and opinions relevant to plaintiff's physical and mental ability to work. Administrative Record [8], pp. 41–42. Absent significant evidence in the record from any treating physician concerning plaintiff's mental limitations, the ALJ assigned "great weight to the most recent opinion of consultative examiner, [Dr.] Fabiano" to support his conclusions concerning the plaintiff's residual functional capacity. Administrative Record [8], p. 20. However, Dr. Smith's opinion in the November 14, 2017 Report that the plaintiff has limited ability to "think", "concentrate", and

-10-

"focus" contradicts Dr. Fabiano's opinion, summarized by ALJ Georger, that plaintiff "did not appear to have any limitations in his ability to . . . maintain attention and concentration". Id. Dr. Smith's opinions could also alter the outcome at other steps of the analysis. For these reasons, the November 14, 2017 Report is not so conclusory, nor insignificant considering the other evidence in the record, that I may reject it out of hand. *Compare with* Rutkowski v. Astrue, 368 Fed. Appx. 226, 229–30 (2d Cir 2010) (Summary Order) ("the . . . does not add so much as to make the ALJ's decision contrary to the weight of the evidence. The Essex County report is a conclusory one-page document that states little more than that Rutkowski 'meets listing 1.04'"); Bushey v. Colvin, 552 Fed. Appx. 97, 98 (2d Cir. 2014) (Summary Order) ("[t]he Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case").

Finally, the Commissioner argues that there is substantial evidence in the record to support the Appeals Council's determination that the November 14, 2017 Report would not have changed the outcome of plaintiff's application. Commissioner's Brief in Response [18-1], pp. 24–25. However, that analysis is within the province of the Administration and may not be conducted by this court. *See* Lesterhuis, 805 F.3d at 89 (2d Cir. 2015) ("[i]n concluding that the ALJ's decision was supported by substantial evidence, the district court identified a number of gaps in Dr. Holder's knowledge of Lesterhuis's condition. But the district court's substantive critique of Dr. Holder's opinions places courts, and not the SSA, in the position of making factual and medical determinations about the evidence before the agency").

Accordingly, I find that the Appeals Council erred when it failed either to consider the November 14, 2017 Report, or to provide its reasons for giving less than controlling weight to the content of that report, and remand this case to the Commissioner.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [10] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [18] is also denied. Because this matter is remanded for further consideration due to the Appeals Council's legal error, I do not reach the parties' remaining arguments.

**SO ORDERED**.

Dated: December 26, 2019

      /s/ Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge